OLD DOMINION TRUST CO. v. FIRST NAT. BANK OF OXFORD et al.

(Circuit Court of Appeals, Fourth Circuit. July 1, 1919.)

No. 1697.

1. EXECUTORS AND ADMINISTRATORS &⇒122(1)—NONRESIDENT CURATOR MAY SUE IN STATE OF DEBTOR'S RESIDENCE.

The curator of an estate appointed under the law of Virginia, which made a valid contract with a nonresident debtor of the estate, by which it obtained collateral security, *held* authorized to maintain a suit in the state of the debtor's residence to enforce such contract.

2. JUDGMENT &⇒822(3)—AGAINST DEBTOR OF ESTATE CONCLUSIVE AS TO SET-OFF IN ANOTHER ACTION IN ANOTHER STATE.

The judgment of a court of Virginia in a conformity proceeding by the curator of an estate, by which an account was stated with a nonresident debtor, which appeared and presented claims against the estate as a set-off, *held* conclusive as to the amount it was entitled to set off in a suit by the curator against it in another state.

3. BANKS AND BANKING &⇒110—PRESIDENT MAY SUBMIT CLAIMS AGAINST DECEDENT ESTATE IN FOREIGN JURISDICTION.

The president of a banking corporation *held* to have authority, as an incident of his office, to submit claims of the bank against the estate of a decedent to the appropriate court in a foreign jurisdiction, and to bind the bank by such action.

Appeal from the District Court of the United States for the Eastern District of North Carolina, at Raleigh; Henry G. Connor, Judge.

Suit in equity by the Old Dominion Trust Company against the First National Bank of Oxford and others. Decree for defendants, and complainant appeals. Reversed.

For opinion below, see 252 Fed. 613.

H. M. Smith, Jr., and S. S. P. Patteson, both of Richmond, Va., for appellant.

A. A. Hicks, of Oxford, N. C., and T. T. Hicks, of Henderson, N. C. (Hicks & Stem, of Oxford, N. C., on the brief), for appellees.

Before PRITCHARD and KNAPP, Circuit Judges, and ROSE, District Judge.

KNAPP, Circuit Judge. The allegations of appellant's bill, which was dismissed by the court below, may be summarized as follows: W. H. Gooch, of Clarksville, Va., died intestate November 14, 1915. He left a large estate, the greater part of which was in Virginia, the balance in North Carolina. He was twice married. His sole heir at law is a daughter by his first wife, Mrs. Annie Wayne Suhor. About a month before his death he married Margaret Corwin Radcliffe, who survives him. On the day of their wedding, and just before the ceremony, they executed an antenuptial agreement which provided, in substance, that if she outlived him the sum of $50,000 should be paid to appellant, Old Dominion Trust Company, to hold the same in trust, and to pay over to her the net income therefrom so long as she remained unmarried.

&⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

A few days after Gooch's death his brother, J. H. Gooch, of Stem, N. C., was appointed administrator in that state, and shortly afterwards was also appointed by the clerk of the circuit court of Mecklenburg county, the county in which the intestate resided, administrator in Virginia. The latter appointment was opposed by the widow, who as such claimed administration for herself; but upon her appeal the circuit court decided against her, and against J. H. Gooch as well, and thereupon, on December 22, 1915, appointed appellant curator of the estate of W. H. Gooch, under a Virginia statute of applicable provisions. Just before this appointment, and on the 15th of December, Mrs. Suhor paid to appellant, as the trustee named in the antenuptial contract, and in accordance with its terms, the sum of $50,000, which sum she borrowed from appellee, the First National Bank of Oxford, on her demand note, bearing interest at 6 per cent., and an order for its payment on J. H. Gooch, the North Carolina administrator.

Among the assets which came into appellant's possession, upon its appointment as such curator, was a certificate of deposit for $80,300, dated December 22, 1914, and bearing interest at the rate of 4 per cent., issued to W. H. Gooch by the Oxford bank on the day of its date, and held by him at the time of his death. The trust company having called upon the bank to pay this certificate, or secure its payment, an arrangement was made and put into effect in February, 1916, by which the bank turned over to the trust company, to secure payment of the certificate, the note of Mrs. Suhor which it held, and agreed that the interest charged on the same should thereafter be but 4 per cent., the same as the certificate. It also agreed that all other notes held by it against Gooch's estate should from that time bear interest only at the rate of 4 per cent.

In August, 1916, the trust company as curator filed in the circuit court of Mecklenburg county a bill for conformity, according to Virginia practice, naming the widow and daughter as defendants; and since that time the Gooch estate, so far as administered in Virginia, has been administered under orders of the court in that suit. Among these was an order directing a commissioner of the court to take an account; that is, as we understand, ascertain the debts and liabilities of the estate. Accordingly there was a hearing on due notice by Commissioner Reeks at Clarksville, on August 14, 1917, at which the president of the bank and its attorney appeared and presented a number of notes made by Gooch and owned by the bank, which were claimed to be valid debts of his estate. Of the notes so presented four were payable on demand to F. A. Burton, a young man who had been Gooch's secretary or confidential clerk, two of them for $9,755 each, dated March 3, 1915, one for $525, dated April 5, 1915, and one for $150, dated June 23, 1914. There was a fifth note for $525, dated April 5, 1915, and payable on demand to R. E. Burton, a brother of F. A. Burton. These five notes, bearing interest at 6 per cent., were purchased by the bank on November 26, 1915, or 12 days after the death of Gooch, and with full knowledge that he was then dead. The production of these notes before the commissioner, the signature of the maker not being disputed, of course made a prima facie case of liability of the estate

for the amount of principal and interest appearing to be due thereon, and of a set-off of that amount against the certificate of deposit held by the trust company, and the burden was upon the latter to show that they should not be allowed accordingly. Claiming that the Burton notes were without consideration, if not fraudulent, counsel for the trust company thereupon examined the bank's president, without objection on his part, as to the circumstances under which the notes were purchased, and his testimony is made an exhibit to the bill of complaint. A further hearing was held at Clarksville a month later, at which the president and attorney of the bank appeared, and for reasons stated asked to withdraw its entire claim on the notes previously presented.

It seems that in the meantime the bank had made up a statement, crediting itself with all the Gooch notes it held, including the five Burton notes, and also with the Suhor note; and thus showing a balance due from it on the certificate of deposit of only $1,643.97. This statement, with the Gooch notes and a check for the balance, was mailed to J. H. Gooch, the North Carolina administrator, but he refused to accept the same, and promptly returned the papers to the bank. Of course the Suhor note was not sent, as it was in the trust company's possession, and for the same reason J. H. Gooch, if he had so desired, could not have surrendered the certificate. And here it may be mentioned that J. H. Gooch, although appointed administrator in North Carolina, appears to have performed none of the ordinary acts of administration, such as taking possession of assets, collecting debts due the estate, advertising for claims, paying creditors, and the like. Indeed, the Bank of Stem, of which J. H. Gooch was president, voluntarily paid to the trust company, after it became curator, a certificate of deposit for some $30,000, which that bank had issued to W. H. Gooch in his lifetime, and which was turned over to the trust company upon its appointment. In this connection the bill alleges that the North Carolina administrator has never claimed, and does not now claim, the certificate in question, but has always recognized the right of complainant to hold and collect the same; and this is virtually admitted by him in an answer filed after the decree below was rendered.

The request of the Oxford bank to withdraw the claim it had presented was refused, and thereupon its representatives retired from the hearing. Examination of other witnesses then followed, and later, upon the whole testimony, the commissioner found and reported that the F. A. Burton notes were without consideration, being a mere gift inter vivos, and therefore not a valid claim against the Gooch estate. The other notes held by the bank, including the R. E. Burton note, were allowed. By decree of October 23, 1917, the circuit court confirmed the findings and report of the commissioner, and no appeal therefrom has been taken. This decree recites that the curator holds a certificate of deposit of the Oxford bank dated December 22, 1914, for the sum of $80,300, payable to W. H. Gooch; recites that the bank has valid claims against his estate, represented by described notes, amounting, with interest, to $8,950.15; expressly disallows the several F. A. Burton notes, which are stated to be held by the bank, "and

asserted by it in this suit as an offset to said certificate of deposit"; and directs the curator "to proceed to make settlement of the said matters with the said bank, allowing it credit for the sum of $8,950.15 only, with interest on the principal thereof from the 1st of September, 1917, and taking such steps as it may be advised necessary and proper to accomplish such settlement and to collect the balance that may be so found due by said bank to the estate of said Gooch."

Upon the entry of this decree the trust company demanded payment of the balance which it was thereby directed to collect, but the bank refused such payment, and instead brought suit in the superior court of Granville county, N. C., against J. H. Gooch, as administrator of the estate of W. H. Gooch, and F. A. Burton, the object of which was, in substance, to compel a settlement upon the basis of the statement sent by it to J. H. Gooch as above recited. Not long afterwards the trust company commenced this action.

In addition to the foregoing the bill alleges that, upon refusal of the bank to make payment in accordance with the Virginia court's decree, it became the duty of complainant to sell the Suhor note, which the bank had pledged to secure the certificate, and that, as complainant has no power of attorney and the bank is a nonresident, it cannot sell the collateral or enforce the obligation secured thereby without the aid of the court in which the suit is brought.

The case made against the sheriff is this: That the tax he seeks to collect is levied on the $80,300 for which the bank issued the certificate of deposit, and on nothing else; that this asset of Gooch's estate is not taxable in Granville county, N. C., but only in Mecklenburg county, Va., where he resided; that the same is listed for taxation in the latter county; and that complainant has paid the taxes thereon for the period since Gooch's death, and also delinquent taxes "for a great number of years" prior thereto.

The bill prays that the bank "be required to pay over to your complainant the debt in question, with interest as aforesaid"; that complainant be directed as to how and when and on what terms it may sell the Suhor note; that the bank be enjoined from prosecuting its suit in the state court; that the sheriff be enjoined from attempting to collect the tax levied in Granville county; and for general relief.

[1] The court below sustained the bank's motion to dismiss the bill, on the ground that complainant, appointed only under the laws of Virginia, was without authority to sue in another jurisdiction; and the correctness of that ruling, as apply to the facts of record, is the question to be decided. The law is not doubtful. It is clearly stated in Moore v. Petty, 135 Fed. 672, 68 C. C. A. 310, citing numerous cases, as follows:

"The general rule undoubtedly is that an executor or administrator in his representative capacity cannot maintain an action in the courts of any sovereignty, other than that under whose laws he was appointed and qualified, without obtaining an ancillary grant of letters in the state where the action is brought, unless the right so to do is conferred upon him by the law of the forum. * * * But whenever the cause of action declared upon by the foreign executor or administrator is one which involves an assertion of his own right, rather than one of the deceased, or which has accrued directly to

him through his contract or transaction, and was not originally an asset of the estate in his charge, he may maintain an action in another state for the enforcement thereof, although express authority so to do may not be found in a statute of the forum. The principle underlying this modification of the general rule is that, when the cause of action accrues directly to the executor or administrator, it is assets in his hands for which he may sue in his personal capacity, and, if he sues as executor or administrator, the words so describing him will be regarded as merely descriptive, and be rejected as surplusage."

If, then, as the bank concedes, the arrangement of February, 1916, constituted a valid and binding contract between it and the trust company, the latter may sue in North Carolina, the state of defendant's domicile, to enforce that contract; or if, as is also conceded, the decree of the Virginia court is a valid judgment in favor of the trust company and against the bank, the trust company may sue in North Carolina to collect that judgment. Considering, first, whether there was a valid contract, we have to take into account the situation of the parties when the arrangement in question was made. The bank owed Gooch's estate $80,300 and some interest, a debt then due, the evidence of which was the certificate of deposit, payable on demand, which passed to the possession of the trust company on its appointment as curator. The size of the debt fully warranted the trust company in requiring it to be paid or secured. Naturally, the bank desired not to lose a large deposit on which it was paying only 4 per cent., while lending the money at 6 or more. J. H. Gooch was in effect disclaiming any right or desire to administer this asset of his brother's estate, and not in fact acting as administrator in North Carolina. On the contrary he was apparently quite willing that the entire estate should be administered by the trust company in its capacity of curator. The bank had loaned Mrs. Suhor $50,000, and held her note for that amount. It does not appear that the order she gave on the North Carolina administrator had been accepted by him, or that there was ever any expectation that he would pay the note. The certificate of deposit which his own bank had issued to the intestate was voluntarily paid to the trust company, and the arrangement under review must be presumed to have been made with his knowledge and approval, as he was a director of the Oxford bank at the time. The note of Mrs. Suhor was given after her father's death, and its subsequent hypothecation conferred rights which were not originally an asset of Gooch's estate, but which accrued directly to the trust company through its own contract with the bank. The whole arrangement, including the pledge of the note, was entered into by or with the assent of the several parties in interest, and evidently regarded as beneficial to all concerned. There was not only an acknowledgment of the trust company's right to hold and collect the certificate, but, in effect and intention, a promise by the bank to pay the same to the trust company at such future time as payment should be required. The agreement was lawful, the parties competent, and the consideration sufficient. To say nothing else, the bank gained by being allowed to retain indefinitely a large deposit, which otherwise it might have been compelled to pay at once; and Mrs. Suhor, to whom the money would ultimately go, got

a reduced rate of interest on her note. We perceive no infirmity in the contract thus made, and which was long treated by the bank as binding, and no substantial reason why the same, as a contract of the trust company itself and not of the decedent in his lifetime, may not be enforced in a foreign jurisdiction. In our judgment, the case made by the bill comes clearly within the well-recognized exception to the rule invoked by the bank, and should be sustained accordingly.

Nor can it be doubted that the trust company's right of action was of equitable cognizance. It could not sue Mrs. Suhor on her note, for the title thereto was in the bank, which had merely pledged the note as security for the certificate; it could not sue the bank, for the bank had not indorsed it; and it could not sell the collateral without an order of the court. In this situation the trust company's proper if not only resort was a court of equity. The proposition is too plain for argument.

[2] If the above-stated conclusions are correct, it is not necessary to decide whether the decree of the circuit court of Mecklenburg county was a valid judgment against the bank, on which of itself the trust company could sue in North Carolina; it is sufficient to hold, as we do, that it was a final adjudication, since there was no appeal, of the bank's claim against Gooch's estate, and therefore fixed the amount which the bank was entitled to set off against the certificate of deposit. Granted that the Virginia court had no power, under the bill for conformity or otherwise, to determine the indebtedness of the bank to Gooch's estate, or to the trust company, it nevertheless had power, and that power was duly invoked, to determine the estate's indebtedness to the bank. It was clearly within the scope of the bill for conformity to ascertain the debts and liabilities of the estate, and its sufficiency for that purpose has been affirmed by the highest court of the state. Gooch v. Old Dominion Trust Co., 121 Va. 30, 92 S. E. 846. The proceeding was regular and in full compliance with the Virginia statutes. The president and attorney of the bank voluntarily appeared before the commissioner, produced the notes held by it, and asked to have them allowed at their face value. To say that this was not an "appearance" in a legal sense, and the formal presentation of a claim, is to contradict the outstanding and conceded facts. For what else were they there? It is surely beyond question that a foreign creditor may, if he choose, come into the state of a decedent's domicile and present his claim against the decedent's estate to the official authorized by the laws of that state to examine and pass upon the same. By so doing he submits his rights to the adjudication of the local tribunal and is bound by its decision.

[3] And if the foreign creditor be an incorporated bank, as in this instance, we deem it equally beyond question that its president has authority, as an incident of his office, to submit the bank's claim and bind the bank by such action. For argument's sake, it may be granted that the bank would not be bound by a judgment of the Virginia court in an action brought therein against the bank, where jurisdiction depended upon the voluntary appearance of the president on his own motion; but it by no means follows that he had not authority to submit the bank's claim against Gooch's estate, just as he might have au-

thorized a suit thereon against Gooch himself if he had been living. The plea of want of authority is without merit.

Moreover, as the record shows, the presentation of the claim at the first hearing was complete, and at that time supposed to be final. The notes were produced, Gooch's signature proved or admitted, and the bank's president examined by counsel for the trust company. This closed the hearing, and the case thus made was submitted to the commissioner for decision, both parties consenting. Later, on the commissioner's own motion, the case was reopened and a date fixed on due notice for further hearing. The bank's president and attorney again appeared, and then for the first time objected to the proceeding and sought to withdraw the claim. We are clearly of opinion that the attempt to do so came too late and was wholly ineffectual. The Virginia court had acquired jurisdiction of the bank by the voluntary appearance of its president and the final submission of its claim a month before. The right to litigate elsewhere was gone, and the commissioner correctly decided to refuse the requested withdrawal and to take the testimony which the trust company thereupon offered. The decree afterwards entered, confirming the findings and report of the commissioner, was therefore a valid determination of the amount which Gooch's estate owed the bank, and that determination became final and conclusive upon failure to take timely appeal. If the commissioner had found that all the Burton notes were valid and just claims, and his finding to that effect had been confirmed by the court, can there be any doubt that the decree would have bound the estate? Why then should not the decree actually made, though adverse in part, be equally binding on the bank?

For the reasons thus outlined we are constrained to hold that the trust company had the right to sue in North Carolina, and therefore in the court below, and that the bank is concluded as to its claim against the Gooch estate by the proceeding in Virginia to which it made itself a voluntary party.

The decree dismissing the bill will be reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

Reversed.