### Davis, Director General of Railroads v. Whitt.

(Decided November 10, 1925.)

### Appeal from Boyd Circuit Court.

1.  Executors and Administrators—Administrator Appointed in One State has no Power Under Statutes Appointing Him to Collect Assets Located in Another State.—An administrator appointed

in one state cannot collect assets of estate in another state without first qualifying therein, for administrator has no power other than conferred upon him by state statutes, and such statutes are not extraterritorial in operation.

2. Attorney and Client—Kentucky Statute Inapplicable to Agreement Made in Kentucky to Prosecute Death Action in West Virginia, and Attorney had no Lien on Suit Under Kentucky Statutes.—Where deceased had lived in West Virginia, residence of his administrator was there, and situs of claim for death of deceased was in such state, held that Kentucky Statutes did not apply to an agreement between deceased's administrator and attorney to prosecute death action against Director General of Railroads, from mere fact agreement was signed in Kentucky, and attorney could not claim lien on such action under Ky. Stats., section 107, providing for attorney's lien.

HOLT, DUNCAN & HOLT and J. R. JOHNSON, JR., for appellant.

JOHN W. WOODS, JAMES DAMRON and W. SCOTT WHITT for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON—
Reversing.

On January 14, 1920, George W. King, while in the employment of the Director General of Railroads as conductor of one of the trains, was killed in Williamson, West Virginia. A few days after his death his widow employed W. Scott Whitt to have an administrator appointed and take the proper steps to collect damages for the loss of his life. Whitt at that time lived at Tolar, Kentucky, but maintained his office at Williamson, West Virginia, and practiced law in both Kentucky and West Virginia. Whitt appeared before the county clerk of Mingo county, West Virginia, in which Williamson lies and the deceased resided. In the name of the widow he obtained an order from the clerk appointing Thomas West as administrator of the estate on February 18, 1920. On February 19, a written contract was entered into between him and the administrator, by which it is recited that the administrator had employed Whitt as attorney for the estate and placed in his hands for collection, either by suit, compromise or otherwise, a claim for damages for the negligent killing of the deceased by the railroad company, and as compensation for his services the administrator agreed to pay him a sum of money equal to fifty per cent of any amount of money recovered upon the claim by a suit, compromise or otherwise. West

at the time was an attorney having an office in Williamson, West Virginia, in the same building where Whitt's office was and on the same floor, but the written contract was signed at the Bailey Fuel Company's office in Toler, Kentucky, where the parties were that day. After the contract was executed Whitt wrote to the Director General of Railroads presenting the claim. The officers representing the railroad came to Williamson and went to see Mrs. King, who agreed to a settlement at $4,500.00, so far as she was concerned. Whitt, and West as administrator, declined to settle for $4,500.00. Thereupon Mrs. King went before the county clerk and procured him to make an order removing West as administrator and appointing Columbus Blackburn as administrator of the estate, upon the ground that she had not employed Whitt and was then an infant. This order was later approved by the county court. Under the practice in West Virginia a county clerk may make an order appointing an administrator in vacation; his order is subject to the approval of the court, but is effective until disapproved. Blackburn after his appointment accepted $4,500.00 in full of the claim for the death of the deceased. He afterwards settled his accounts and paid over the balance in his hands to Mrs. King, there being no children. On October 15, 1920, after all this had been done Whitt brought this suit against the Director General of Railroads, alleging, in substance, that he as attorney had a lien upon the $4,500.00 for his fee of $2,250.00, and praying judgment therefor. An answer was filed; proof was taken showing the facts above stated, and on final hearing the circuit court entered a judgment in favor of Whitt. The Director General of Railroads appeals. Section 107, Ky. Stats., is in these words:

"Attorneys-at-law shall have a lien upon all claims or demands, including all claims for unliquidated damages put into their hands for suit or collection, or upon which suit has been instituted, for the amount of any fee which may have been agreed upon by the parties, or, in the absence of such agreement, for a reasonable fee for the services of such attorneys; and if the action is prosecuted to a recovery, shall have a lien upon the judgment for money or property which may be recovered—legal costs excepted—for such fee; and if the records show the name of the attorney, the defendant in the

action shall have notice of the lien; but if the parties before judgment, in good faith, compromise or settle their differences without the payment of money or other thing of value, the attorneys shall have no claim against the defendant for any part of his fee.''

Whitt's claim rests upon the ground that as his written contract was made at Toler, Kentucky, it is a Kentucky contract and that being a Kentucky contract he has a lien by virtue of the statute; but back of this is the question whether the statute has any application here. The West Virginia law gives no lien.

"As a general rule, no law has any effect, of its own force, beyond the territorial limits of the sovereignty from which its authority is derived." 25 R. C. L. 781.

"The rule against giving statutes an extra-territorial operation has been applied to a statute conferring a right of action on personal representatives, and prescribing their duties with respect to money that they may recover by action, and to statutes of limitation." 25 R. C. L. 782.

Following this rule in Taylor v. The Pennsylvania Co., 78 Ky. 350, this court said:

"A personal representative, as such, has no rights or powers beyond the jurisdiction of the government under whose laws he received his appointment, and *a priori* he cannot have any rights nor be subject to any obligations or duties not imposed by the law of his official domicile. He cannot carry his official character abroad, nor can his official powers and duties at home be affected by foreign laws."

To same effect see Com. v. Peebles, 134 Ky. 121.

The administrator appointed under the statutes of the state has of necessity no other power than that conferred upon him by the statutes of the state. As these statutes have no extraterritorial operation, his powers are of necessity confined to the state of his appointment. An administrator appointed in West Virginia cannot as such collect assets located in Kentucky. To do this he must qualify in Kentucky. Barrett v. Barrett, 170 Ky.

91. In this case there were no assets of the estate in Kentucky. The only asset of the estate was the claim against the railroad company which accrued in West Virginia, and under the federal statutes, which apply to the case, could only be sued upon in Mingo county, West Virginia. Section 107, Kentucky Statutes, has no application to such a case. The words "for suit" and the words "if the action is prosecuted to a recovery" apply only to actions in Kentucky. The words, "if the records show the name of the attorney the defendant in the action shall have notice of the lien," must mean this. For plainly the legislature did not intend to affect proceedings out of the state. In this case the residence of the administrator was in Williamson; the residence of the deceased was there; the offices of the attorney and the administrator were there in the same building and on the same floor. The attorney had procured the appointment of the administrator on the day before the written contract was signed. To hold that the Kentucky statute applies to this contract because it was signed in Kentucky would clearly be to extend the statute to a case not within the contemplation of the legislature when it was passed.

"The laws of no nation can justly extend beyond its own territories, except so far as regards its own citizens. They can have no force to control the sovereignty or rights of any other nation within its own jurisdiction. And, however general and comprehensive the phrases used in our municipal laws may be, they must always be restricted in construction, to places and persons, upon whom the legislature have authority and jurisdiction. The Appollon, 9 Wheat, 362.

The claim against the railroad had its situs in Mingo county, West Virginia. It had no situs in Kentucky. The Kentucky statute does not create a lien on property in other states, of which the courts in Kentucky have no jurisdiction.

Judgment reversed and cause remanded for a judgment as above indicated.