## ROBINSON v. CITY NAT. BANK OF COLORADO.

### No. 1002.

District Court, N. D. Texas, Abilene Division.
Dec. 21, 1931.

Douthit, Mays & Perkins, of Sweetwater, Tex., and Wagstaff, Harwell, Wagstaff & Douthit, of Abilene, Tex., for plaintiff.

Thomas Smith, of Colorado, Tex., for defendant bank.

Beall & Beall, of Sweetwater, Tex., for intervener.

WILSON, District Judge.

In the early part of 1917, John Taylor, Sr., of Marion county, Ky., died testate leaving a large estate, considerable portion of which, consisting entirely of lands, was located in Texas. In his will, John Taylor, Jr., and J. Clark Taylor were named as executors. The will directed the executors to reduce the assets of the estate to cash by selling same at either public or private sale. The executors came to Texas to do this, as applied to the Texas lands. No ancillary administration was sued out as could have been under articles 3352 and 3365 of Revised Civil Statutes of Texas. They merely filed a record of the probated will in Mitchell county, Texas, where some of the lands were situated, this being done for the sole purpose that the recordation of same should constitute a muniment of title. Their authority, however, to take possession of and administer the lands in Texas was not resisted, and they took peaceable possession and control of same and proceeded to sell the lands, taking in payment therefor cash, and vendor's lien notes payable to them, described as executors. About $20,000 of the cash so received was deposited in the City National Bank of Colorado, the defendant here, in their names, and a like amount of such notes were left with the bank for safekeeping. Thereafter, the executor, John Taylor, Jr., died, and on the 6th day of May, 1929, the remaining executor, J. Clark Taylor, was removed by the Marion county court because of unfitness to discharge the trust. On the following day the Kentucky court appointed James H. Robinson, the plaintiff here, administrator de bonis non, with will annexed.

Thereafter, on the 25th day of February, 1930, in his personal capacity and not as administrator, he filed this suit at law against the defendant to recover the money and notes it held. The petition alleges diversity of citizenship and substantially the history of the matter as above stated, and in addition, that the executors were in actual possession of the money and notes and personally entered into the contract with the defendant bank at the time the money was deposited and notes left for safe-keeping; that same so held by defendant are unadministered assets of the estate; that the administration is still pending in Kentucky, and furthermore that a suit for the distribution of the estate was pending in the circuit court of Kentucky, having jurisdiction over such matters; that he was ordered to collect all of the funds and assets of the estate, to the end that same be distributed under the terms of the will, after all debts, charges, and expenses against the estate were paid; that his predecessors, the executors, because of their actual possession of the money and notes prior to their deposit with the defendant and because of their personal contact and dealings with the defendant in so making said deposits, such not being original assets, had the right, by reason thereof, to enforce, by a personal action in this court, sitting in Texas, the payment and delivery to them by said defendant of such funds; and that he, as the duly qualified administrator, succeeded to all of the rights of such executors and to the title, right of possession, and control of said assets, including their said right to bring such personal action to recover same.

Defendant bank filed a plea in abatement in this court, challenging the right of plaintiff as a Kentucky administrator, in the absence of ancillary administration in Texas, to maintain this suit for the estate in any capacity; that his powers were derived solely from the appointing court in Kentucky, and was without any authority in such matters beyond the territorial limits of Kentucky, and upon such grounds prayed the case be dismissed. A stipulation waiving a jury was entered and all matters submitted to the court. The facts were stipulated and the questions of law were submited by oral arguments, at the conclusion of which, or a few days thereafter, defendant's plea in abatement was overruled, and judgment was entered for the plaintiff.

After the judgment was entered and before same was executed and before any appeal was taken or the term of court had expired, J. Clark Taylor, the removed executor, asked leave to intervene, and there being no opposition same was granted. Thereupon he filed a plea of intervention setting up in substance the same propositions as were pleaded by defendant bank. Plaintiff has raised no question that the intervention

came too late, but is meeting the plea on its merits. So the practical effect of the situation is a rehearing of the matters presented on the former trial.

I reiterate that the money and notes left with defendant were not original assets of the estate, but were the proceeds of the sales of Texas lands coming into the actual possession of the executors of the estate acting at that time, and that the deposit of money and notes which were payable to them was a personal transaction and contract between said executors and the defendant. Plaintiff on the former hearing and now insists, under the authority of Moore v. Petty (C. C. A.) 135 F. 668, 672; Old Dominion Trust Co. v. First National Bank of Oxford (C. C. A.) 260 F. 22; and like authorities of other states, including Texas, that the executors, John Taylor, Jr., and J. Clark Taylor, despite the fact they were foreign executors and there was no ancillary administration in Texas, could maintain a personal action in any Texas court of competent jurisdiction or in this court for the purpose of enforcing the collection of the money and notes deposited by them with defendant, and further insisted and insists now, under such authorities as Clark's Administrator v. Farmers' National Bank of Richmond, 124 Ky. 563, 99 S. W. 674, 675, that plaintiff James H. Robinson, as their successor, under appointment of the Kentucky court, succeeded to all of the rights of said executors in this regard, including the right to bring such a personal action in this court to recover the money and notes.

The case of Moore v. Petty, supra, was a case where Pennsylvania executors, Petty and Negley, sued the real estate firm of Moore and Chick in the state of Iowa, without an effective ancillary administration having been taken out in Iowa. The suit was to recover part of the purchase price of certain lands which said firm, as their agents, had sold belonging to the estate under administration and which contract for sale with such agents had been entered into personally by the executors. The facts briefly were: The executors made a contract with these Iowa agents to sell certain of the lands belonging to the estate at a fixed price, agreeing to pay for their services a certain commission, and in the suit the executors claimed the land was sold for a greater price and that the agents retained not only their commission, but the difference between the agreed and the increased price for which the land was sold. It will be seen the situation was very similar to the one we have here; that is, the suit in Iowa was not to recover original

assets of the estate and was to enforce a contract not made by the agents with the decedent, but with the executors themselves. The jurisdiction of the United States District Court in Iowa was challenged upon identical grounds as here. The plea was overruled by the trial court and the case appealed to the Eighth Circuit, and Judge Hook dealt with the proposition in this language: "The general rule undoubtedly is that an executor or administrator in his representative capacity cannot maintain an action in the courts of any sovereignty other than that under whose laws he was appointed and qualified, without obtaining an ancillary grant of letters in the state where the action is brought, unless the right so to do is conferred upon him by the law of the forum. * * * But whenever the cause of action declared upon by the foreign executor or administrator is one which involves an assertion of his own right, rather than one of the deceased, or which has accrued directly to him through his contract or transaction, and was not originally an asset of the estate in his charge, he may maintain an action in another state for the enforcement thereof, although express authority so to do may not be found in a statute of the forum. The principle underlying this modification of the general rule is that, when the cause of action accrues directly to the executor or administrator, it is assets in his hands for which he may sue in his personal capacity, and, if he sues as executor or administrator, the words so describing him will be regarded as merely descriptive and be rejected as surplusage." The case of Old Dominion Trust Co. v. First National Bank of Oxford, 260 F. 22, decided by the Fourth Circuit, is to the same effect. The case was filed in the United States District Court for the Eastern District of North Carolina, 252 F. 613. The first paragraph of the syllabus well indicates the holding: "The curator of an estate appointed under the law of Virginia, which made a valid contract with a nonresident debtor of the estate, by which it obtained collateral security, held authorized to maintain a suit in a state of the debtor's residence to enforce such contract." The Supreme Court of Texas, in Terrell v. Crane, 55 Tex. 81, the opinion being by Associate Justice Bonner, held that such foreign administrators could not, under such circumstances, maintain suits in Texas upon a debt belonging to the estate of the decedent, "where the title thereto has not been directly vested into the administrator, as when made payable to him, or when judgment has been previously recovered in his name."

These authorities, and innumerable others which might be cited, make it unmistakably clear, under the circumstances here, the original executors could have maintained this suit in this court. Counsel for the defendant bank on the former hearing, relied on the proposition that these authorities did not support plaintiff's contention that the original executors had the right to file such personal action to recover of the bank these deposits and that it necessarily followed the plaintiff, James H. Robinson, as administrator would not have such right. Counsel for the intervener, J. Clark Taylor, on the other hand, concedes such authorities are applicable and that they abundantly support plaintiff's position that the original executors could have maintained this suit, but takes the position that this right in the executors to bring such a personal action did not pass to the plaintiff, as their successor; that he never having been in possession of the assets of the estate delivered to the bank and having had no connection directly or otherwise with the transaction by which the properties were left with the bank, necessarily derives his authority solely from the Kentucky court; that the circumstance of his having had no personal connection with the deposit subjects him to the general rule. This proposition not being asserted on the former hearing was passed over without examination. I rather assumed, if the right to bring such a personal action in Texas had accrued to the executors, since they were removed, one by death and the other by court, such right, by suit in Texas to enforce this contract with the bank, would survive to this administrator with will annexed. Upon a careful consideration of the matter, however, I am of the opinion this right in the executors to sue in this court sitting in Texas for the enforcement of their contract with the bank passed out of existence when they passed out of office.

Plaintiff cites as authority to the contrary Clark's Administrator v. Farmers' National Bank of Richmond, supra. This is a case by the Court of Appeals of Kentucky. A brief summary of the facts is that J. W. Gregory as executor of the estate of Francis Clark deposited in the Farmers' National Bank of Richmond, Ky., $500 belonging to the estate and later died, W. O. Goodlow being appointed his administrator. After qualifying as such, Goodlow in his capacity as the executor's administrator collected the money from the bank. W. D. Gregory was appointed and qualified as the administrator de bonis non, with will annexed, of Francis Clark, and after due demand for the money on deposit, which was refused, sued the bank. The court in passing upon the matter quoted from Beall v. New Mexico, 16 Wall. (83 U. S.) 539, 21 L. Ed. 292, as follows: "All assets of the testator or intestate in the hands of third persons at the death of an administrator or executor belong to the administrator de bonis non. Of course, debts and choses in action not reduced to possession belonged to this category." And the Kentucky court said: "Applying the foregoing principles to the case in hand, we conclude that the sum in controversy having been deposited in the bank to the credit of J. W. Gregory, as executor, places it in the category of unadministered assets of the estate to which it belonged; and, this being true, it follows that the right to collect it passed to the administrator de bonis non." This would appear to be exactly in point and would be, were plaintiff, Robinson, suing this defendant in Kentucky. No one questions the right of administrators, under such circumstances, to enforce all such contracts and the collections of all such claims. If, in the case cited, the executor, Gregory, had deposited the money, not in a Kentucky bank, but just across the line of Ohio, in a Cincinnati bank, and the administrator of Clark had sued such bank in Cincinnati to collect the $500, you could have exactly the question presented here. It is conceded under Kentucky law that the right to collect these funds passed to this plaintiff, but obviously the remedy of enforcing this right by suit in Texas did not pass by virtue of such laws. No Kentucky decision could have this effect.

The executors did not acquire this right of a personal action in Texas by virtue of their appointment, nor from the will. They matured this right in themselves by reason of their lawful possession of the money and notes in question, not as original assets of the decedent, but as the proceeds of sales of lands which they had negotiated, and by virtue of the fact, the contract with the bank was a perfectly legitimate and lawful one and bound the bank to pay and deliver to them in person. Under such circumstances for the Texas or federal courts to deny them the right to go into our courts to enforce the contract would be to repudiate the validity of the contract as originally made. The plaintiff cannot come under the exception to the general rule for the simple reason he had nothing to do with the making of the contract. The fact he is administrator with will annexed makes no difference. In re Estate of Crawford, 68 Ohio St. 58, 67 N. E. 156,

96 Am. St. Rep. 654. He stands in the shoes of a general administrator, deriving all of his authority and his power from the Kentucky court.

As I have said this right of a personal action in the executors was not derived from the Kentucky court, it arises out of the circumstances, and upon their removal, certainly it could hardly be contended that their personal right in this regard survives to the Kentucky court. It is purely personal; that is, their right to sue, it being only proper or necessary for them to plead their fiduciary capacity in explanation of this right. It follows that it does not survive to the administrator appointed to succeed them. Whether a Kentucky administrator has authority to sue in Texas depends upon Texas decisions and Texas statutes. There is no law in Texas permitting the plaintiff, Robinson, under the circumstances to sue, while there is authority for the executors to have sued. There is no privity between the plaintiff as administrator and the executors, with relation to this bank transaction in Texas. Clarke v. Webster (Tex. Civ. App.) 94 S. W. 1088.

Suppose the testator, John Taylor, Sr., himself, had sold these lands and deposited the money and notes in the defendant bank. He could sue in either state or federal court in Texas, but he dies. Every chose in action he had passed to his executors, but it would hardly be contended such executors, without ancillary administration, could sue in Texas to collect the deposit. Then it would hardly be tenable that, having been deposited with the bank by his executors, upon their death, his administrator de bonis non could bring such a suit. Such an administrator would clearly come under the general rule, which general rule ultimately controls the decision of this matter. It is well stated in 24 Corpus Juris, page 1109: "Letters testamentary or of administration have no extra territorial force and confer no authority upon the representative to administer upon property outside of the state of his appointment." In 11 Ruling Case Law, 447, the subject is dealt with thus: "The disability does not, however, attach to the subject of the action, but to the person of the plaintiff. He cannot sue, because his appointment stops at the boundary of the state which appointed him. A suit in another state must ordinarily be brought by an ancillary administrator, or the foreign representative must take out ancillary letters in the state of forum, or must be clothed with authority by the laws of the state in whose courts he desires to appear." The Supreme Court in Johnson v. Powers, 139 U. S. 156, 11 S. Ct. 525, 526, 35 L. Ed. 112, dealing with a like situation, held: "The plaintiff certainly cannot maintain this bill as administrator of Stewart, even if the bill can be construed as framed in that aspect, because he admits that he has never taken out letters of administration in New York; and the letters of administration granted to him in Michigan confer no power beyond the limits of that state, and cannot authorize him to maintain any suit in the courts, either state or national, held in any other state." At a much earlier time the Supreme Court expressed it thus: "Every grant of administration is strictly confined in its authority and operation to the limits of the territory of the government which grants it; and does not, de jure, extend to other countries. It cannot confer, as a matter of right, any authority to collect assets of the deceased in any other state; and whatever operation is allowed to it beyond the original territory of the grant is a mere matter of comity, which every nation is at liberty to yield or to withhold, according to its own policy and pleasure, with reference to its own institutions and the interests of its own citizens." Vaughan v. Northup, 15 Pet. 1, 5, 10 L. Ed. 639. Also, Moore v. Mitchell, 281 U. S. 18, 50 S. Ct. 175, 74 L. Ed. 673, a late expression of the Supreme Court on this subject. It will be of interest to note the general rule as recognized by the courts of Kentucky and Texas. In Davis, Director General of Railroads, v. Whitt, 211 Ky. 142, 277 S. W. 311, 312, the Court of Appeals of Kentucky expressed this view: "The administrator appointed under the statutes of the state has of necessity no other power than that conferred upon him by the statutes of the state. As these statutes have no extraterritorial operation, his powers are of necessity confined to the state of his appointment. An administrator appointed in West Virginia cannot as such collect assets located in Kentucky. To do this he must qualify in Kentucky." Incidentally, this sufficiently meets plaintiff's citation of section 3892 of the Statutes of Kentucky, specifically providing that an administrator, with will annexed, shall have all the powers and rights of executors. Of course, this statute was dealing with powers to be exercised in Kentucky. The general rule in Texas, from the earliest times, has been in substance as expressed by the federal courts. The Commission of Appeals of Texas, in Faulkner et al. v. Reed, 241 S. W. 1002, 1007, held: "An ad-

ministrator is the agent solely of the court appointing him, clothed with authority to administer only such assets as are within the jurisdiction of the court making such appointment. In other words, an administrator has no extraterritorial authority." This was approved by the Supreme Court of Texas. The same holding was made by a Court of Civil Appeals of Texas in Clarke v. Webster, 94 S. W. 1088: "It is settled beyond cavil or dispute, by numerous decisions, that letters testamentary and of administration have no legal force or effect beyond the territorial limits of the state or country in which they are granted. It follows that the legal representatives of a deceased person must derive all of their authority from the laws of a sovereignty under whose laws they may have received their appointment, and therefore the executor or administrator appointed in one state necessarily can have no authority nor liability in another, and there is no privity between an administrator of an estate in one state and an administrator of a part of the same estate in another state."

As heretofore stated, the original executors took out no ancillary administration in Texas. The mere filing of the will in Texas did not have the effect of ancillary administration. Henry v. Roe, 83 Tex. 446, 18 S. W. 806; Clarke v. Webster, supra; Hare v. Pendleton (Tex. Civ. App.) 214 S. W. 948, 953. Such being their situation, upon their arrival in Texas, they were under this general rule. The possession of the Texas properties was voluntarily surrendered to them. If the tenants in possession had refused to recognize them they were absolutely without authority to enforce delivery. But having been voluntarily delivered and the will having been filed, in compliance with article 8305, Revised Civil Statutes of Texas, they could make title. Such is the status of plaintiff, being wholly without authority to forcibly collect assets of the estate in Texas. These deposits sued for, though not original assets, are nevertheless unadministered assets of the estate. The position of the defendant is simply one of denying the authority of the plaintiff and refusing upon his demand to deliver the assets. Under such circumstances the following authorities hold that plaintiff is without authority to forcibly collect: Justice Story, following the rule as between nations, in his Conflict of Laws, p. 723, § 514, said: "It is exceedingly clear that the probate grant of letters testamentary or of letters of administration in one country give authority to collect the assets of the tes-

tator or intestate only in that country, and do not extend to the collection of assets in foreign countries." Doe v. M'Farland, 9 Cranch, 151, 3 L. Ed. 687: "An administrator, as such, cannot intermeddle with the effects of his intestate in another state, unless permitted to do so by the laws of that state." Davis, Director Gen. of Railroads, v. Witt, Kentucky case above cited: "An administrator appointed in West Virginia cannot as such collect assets located in Kentucky." Hare v. Pendleton, supra, a Texas case: "Our laws do not confer upon one holding a foreign appointment as executor or administrator authority to perform any official act in this state, either in controlling property belonging to the decedent, or forcibly collecting debts due the estate." In Williams v. Fuerstenberg et al. (Tex. Civ. App.) 12 S.W.(2d) 812, it was even held that a written boundary line agreement entered into by a foreign administrator was inadmissible in evidence on the ground of no authority to make it.

It is therefore clear if the plaintiff claims the right to act in his official capacity in Texas that the above authorities, federal, Kentucky, and Texas, are a complete answer to such claim. On the other hand, if he claims, as he does, the right to maintain this as a personal action because the executors had such right, the complete answer to this claim is the holding of the court in the case of Moore v. Petty, upon which he mainly relies, to the effect that such a foreign executor or administrator, in order to maintain such a personal action, must show either: (1) That he has an ancillary grant of letters in the state of the suit; or (2) that "the right so to do is conferred upon him by the law of the forum"; or (3) that the action declared upon is an assertion of his own right; or (4) that the right has accrued directly to him through his contract or transaction. Under the facts as stipulated he is not able to comply with any one of these requirements. Of equal importance, he is unable to comply with Terrell v. Crane, supra, by the Supreme Court of Texas holding he is without right to sue in Texas upon a debt belonging to the estate of his decedent, where the title thereto had not been directly vested in him, as when made payable to him, or when judgment had been previously rendered in his name.

For the reasons stated, the judgment heretofore entered will be set aside, and at such time as will suit the convenience of the parties, the plea in abatement will be sustained and the case dismissed.